Case 1:20-cv-08944-RWL   Document 25   Filed 06/06/22   Page 1 of 18

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/6/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSEPH BALOTTI,

                      Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-------------------------------------------------------------X

20-CV-8944 (RWL)

**DECISION AND ORDER:
<u>SOCIAL SECURITY APPEAL</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Plaintiff Joseph Balotti ("Plaintiff"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Balotti is not entitled to disability insurance benefits ("DIB"). Balotti has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules Of Civil Procedure, asking the Court to vacate the administrative decision and remand the case for a new hearing and decision. The Commissioner has cross-moved for summary judgment and asks the Court to affirm the Commissioner's decision. For the reasons explained below, this Court GRANTS Balotti's motion and DENIES the Commissioner's motion.

## STANDARD OF REVIEW

      A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. 42 U.S.C. § 405(g); *Skrodzki v. Commissioner Of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order). The inquiry is "whether the correct legal standards were applied and

1

whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (same).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)). Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F.Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*,

__ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *Dunston v. Colvin*, 14-CV-3859, 2015 WL 54169 at *4 (S.D.N.Y. Jan 5, 2015) (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). That is what happened in Balotti's case; the ALJ legally erred.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff previously worked as a truck driver and freight delivery driver for UPS. On May 5, 2017, Plaintiff was injured when he pulled his back while making a delivery. (R. 329.) An MRI revealed a herniated disc. (R. 293.) Over the next two years, Plaintiff regularly saw doctors for evaluation and treatment due to pain in his lower back and sciatica extending down his left leg. Plaintiff engaged in a number of therapies, including physical therapy, aquatherapy, electrical stimulation therapy, steroid injections, prescription pain medications, and use of a back brace, which he wore regularly. He did not have surgery.

On September 6, 2018, Plaintiff protectively filed an application for DIB, alleging disability beginning August 22, 2017, due to herniated discs and sciatica in his left leg. (R.59-60, 173, 201.[1]) Plaintiff's claims initially were denied on November 30, 2018. (R.

---

[1] "R." refers to the certified administrative record (Dkt. 16).

71.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held remotely on November 25, 2019 before ALJ Sharda Singh. (R. 31-57.) Plaintiff, represented by counsel, testified, as did a vocational expert. The ALJ issued her decision on December 27, 2019, finding that Balotti was not disabled. (R. 15-25.)

In reaching her decision, the ALJ followed the sequential five-step analysis for evaluating DIB claims. *See* 20 C.F.R. § 404.1520. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 22, 2017. (R. 17.) Second, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease of the lumbar spine with lumbar radiculopathy, and obesity. (R. 17.) Third, the ALJ determined that none of those severe impairments met or medically equaled one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, for which disability is presumed. (R. 18.)

Next, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"), finding that he had the RFC to perform sedentary work subject to certain limitations.[2] (R. 18.) Those limitations included several exertional limitations; specifically, that the Plaintiff "can never

---

[2] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (observing that "the concept of sedentary work contemplates substantial sitting"). A sedentary worker thus needs to be able to sit for approximately six hours in an eight-hour workday. Social Security Ruling ("SSR") 83-10 ("periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday"). As a result, a claimant must be able to "remain seated for extended periods of time." *Vellone On Behalf Of Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138, at *1 (S.D.N.Y. July 6, 2021); *see also Ferraris*, 728 F.2d at 587 ("alternating between sitting and standing may not be within the concept of sedentary work").

climb ladders, ropes, and scaffolds, but occasionally climb ramps and stairs. The claimant can occasionally balance with use of a cane. The claimant can occasionally stoop, crouch, kneel, and crawl. The claimant requires a sit/stand option defined as after 20-30 minutes sitting the claimant must have the opportunity to stand 1-2 minutes and sit back down without being off-task. The claimant occasionally will need to elevate the legs less than 12 inches." (R. 18.) The ALJ then determined at the fourth step that Plaintiff was unable to perform any past relevant work. (R. 23.) At the final step, however, the ALJ determined that Plaintiff could perform other work in the national economy, such as addresser, table worker, and telephone order clerk/room service. (R. 24.)

Following denial of an administrative appeal (R. 1-3), Plaintiff filed the instant action on October 26, 2020. Plaintiff challenges only one aspect of the ALJ's decision: her assessment, in determining Plaintiff's RFC, of the opinion provided by an independent examiner, Dr. Marc Appel. The ALJ found Dr. Appel's opinion "less persuasive," while finding "persuasive" the opinions of other medical sources; namely, a consultative non-examining doctor who reviewed Plaintiff's medical file, a consulting doctor who examined Plaintiff, and one of Plaintiff's treating physician assistants. (R. 21-23.) The ALJ's assessment of Dr. Appel's opinion at issue reads in its entirety as follows:[3]

> After an independent medical examination on August 14, 2018, Marc Appel, M.D., opined that the claimant could occasionally lift/carry 5 pounds, occasionally push and pull 5 pounds, occasionally sit, stand, and walk, never climb, kneel, bend, or stoop, frequently grasp and perform fine

---

[3] The record includes two earlier opinions of Dr. Appel provided in the context of Plaintiff's worker's compensation claim. (*See* R. 500-508.) With respect to those opinions, the ALJ dismissed Dr. Appel's conclusory assertions that Plaintiff was 100% disabled and cannot work, but found persuasive Dr. Appel's opinion that Plaintiff requires use of a cane. (R. 22-23.) Plaintiff's motion papers do not challenge the ALJ's assessment of Dr. Appel's worker's compensation opinions.

>manipulation, occasionally drive, cannot operate machinery or be exposed to temperature extremes or environmental, and could overhead reach and reach below shoulder level (Exhibit 8F, page 14). Dr. Appel opined that the claimant could perform less than sedentary work (Exhibit 8F, page 14). I find this opinion less persuasive, because it is not wholly supported by, and consistent, with the clinical findings and objective findings in the record. Specifically, while physical examinations in the record show limited range of motion in the lumbar spine and an antalgic gait, they also show lack of significant sensory deficits, mostly full muscle strength, and no significant neurological deficits. Notably, the claimant has not required back surgery and the treating record reflects improvement in pain symptoms with conservative treatment modalities, including physical therapy, heat, and ice. Indeed, at a consultative examination, the claimant appeared to be in no acute distress, used no assistive devices, needed no help changing for the exam, and was able to rise from a chair without difficulty, and had full motor strength in the upper and lower extremities (Exhibit 7F, pages 2-3). Accordingly, the record does not support that the claimant is limited to less than sedentary work, but instead supports the claimant can perform sedentary work with a sit/stand option, opportunity to elevate his legs, and use of a cane to balance.

(R. 22.)

Plaintiff argues that the ALJ legally erred by failing to sufficiently articulate her reasons for evaluating Dr. Appel's opinion as she did. Specifically, Plaintiff argues that the ALJ failed to adequately explain her assessment of one of the key factors that an ALJ must consider and explain pursuant to recently amended regulations: "supportability." Before discussing that argument, the Court sets forth the regulatory requirements for an ALJ's evaluation of medical opinion evidence.

## EVALUATION OF MEDICAL OPINION EVIDENCE

ALJs must consider medical opinion evidence of record. *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014). Until recently, regulations required application of the so-called "treating physician rule" pursuant to which

6

the opinion of a claimant's treating physician presumptively was entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

For claims filed on or after March 27, 2017, however, new regulations no longer afford a treating doctor's opinion a presumption of controlling weight. Instead, all acceptable medical source opinions are evaluated for their persuasiveness and must be assessed under the same standard of supportability and consistency with no presumption that one opinion carries more weight than another.[4] 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

The new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight: supportability and consistency. 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions … are supportability … and consistency"). Supportability refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations. 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.*

---

[4] Acceptable medical source opinions are listed in the regulations and include, among others, licensed physicians, psychologists, and physician's assistants. 20 C.F.R. § 404.1502.

Consistency refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources. 20 C.F.R. § 404.1520c(c)(2). "Consistency 'is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *White v. Commissioner of Social Security*, No. 20-CV-6222, 2022 WL 951049, at *5 (quoting *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[5] 20 C.F.R. § 404.1520c(c)(2)..

In most instances, the ALJ may, but is not required to, discuss the other factors previously required to assess medical opinion evidence (i.e., relationship with the claimant, specialization, and other relevant factors). 20 C.F.R. § 404.1520c(b)(2). The ALJ must consider those additional factors, however, if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well- supported … and consistent with the record … but are not exactly the same,

---

[5] The regulations define a "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). In contrast, a "nonmedical source" is defined as a list of persons that include the claimant, educational personnel, social welfare agency personnel, family members, caregivers, friends, neighbors, employers, and clergy. 20 C.F.R. § 404.1502(e). Medical sources are distinct from "objective medical evidence," which is defined as "signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f).

8

we will articulate how we considered the other most persuasive factors ...."[6]  20 C.F.R. § 404.1520c(b)(3).

An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.  20 C.F.R. § 404.1520c(b)(2); *Vellone*, 2021 WL 319354 at *6 ("in cases where the new regulations apply, an ALJ ***must*** explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original).  As noted in the Administration's revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the path of an adjudicator's reasoning …."  Revisions To Rules Regarding The Evaluation Of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017) ("Revisions"); *see also Amber H. v. Saul*, No. 20-CV-490, 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) ("Although the new regulations eliminate the perceived hierarchy of medical sources … the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 416.920c(a), (b)).

---

[6] More specifically, if medical opinions on the same issue are equally well-supported and consistent with the record but are not identical, the ALJ must "articulate how [he] considered the other most persuasive factors."  20 C.F.R. § 404.1520c(b)(3).  Of the remaining factors, the third is the relationship with the claimant, for which the ALJ must consider the (1) length of the treatment relationship, (2) frequency of examinations, (3) purpose of the treatment relationship, (4) extent of the treatment relationship, and (5) examining relationship.  20 C.F.R. § 404.1520c(c)(3).  The fourth factor – specialization – requires the ALJ to account for whether the medical opinion is provided by a specialist that has expertise in the area related to the medical issue.  20 C.F.R. § 404.1520c(c)(4).  Lastly, the fifth factor is a catchall, which accounts for "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c)(5).  That includes, but is not limited to, evidence showing a medical source has familiarity with other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."  *Id.*

Under the previous regulations, an ALJ's failure to consider the factors prescribed by the treating physician rule was grounds for remand. Similarly, under the current regulations, an ALJ's failure to properly consider and apply the requisite factors for evaluating medical source opinions is grounds for remand. *See, e.g.*, *Rivera v. Commissioner Of The Social Security Administration*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *R. & R. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiner's opinions"); *Andrew G. v. Commissioner Of Social Security*, No. 19-CV-942, 2020 WL 5848776, at *6-7 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors that led her to her decision). As Plaintiff's application post-dates March 27, 2017, the Court applies the revised regulations applicable to evaluation of medical opinions.

## DISCUSSION

Plaintiff claims the ALJ erred by failing to sufficiently evaluate Dr. Appel's opinion for supportability. The Court agrees, although not for all the same reasons posited by Plaintiff.

The ALJ's assessment of supportability of Dr. Appel's opinion fell short of what the regulations require and was error for several reasons. To begin, the regulations define supportability for a medical source opinion as having two components: objective medical evidence and the medical source's explanations. 20 C.F.R. § 404.1520c(c)(1). In finding Dr. Appel's opinion less persuasive, the ALJ nowhere referred to any explanation that Dr. Appel gave to support his opinion. Instead, the ALJ referred only to other "clinical findings and objective findings in the record," entirely omitting any discussion of Dr. Appel's

10

explanations and what he considered in arriving at his opinion.[7] (R. 22.) That was error. *See Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *R&R adopted*, 2022 WL 717612 (S.D.N.Y. March 10, 2022) ("Nowhere in the ALJ's decision does she explain, as the new regulations require, what the respective [Consulting Examiners] used to support their opinions and reach their ultimate conclusions"); *Brianne S. v. Commissioner of Social Security*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (ALJ committed legal error by failing to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions").[8]

Second, the ALJ erred in relying on the clinical and objective findings she cited as a basis to find Dr. Appel's opinion not well supported. While acknowledging that physical

---

[7] The ALJ did refer generally to "physical examinations in the record" that "show limited range of motion in the lumbar spine and an antalgic gait." (R. 22.) The ALJ did not indicate to which examinations she was referring, whether those by Dr. Appel for his independent consultation, or those in the treatment records, or both. In any case, those findings support Dr. Appel's opinion and do not provide any basis for finding his opinion "less persuasive." The ALJ also referred to "lack of significant sensory deficits, mostly full muscle strength, and no significant neurological deficits," again without specifying whether those findings were those of Dr. Appel or others or both. (R. 22.) Regardless, as discussed below, the ALJ erred in her analysis of those findings.

[8] The Commissioner argues that *Cuevas* should not be relied on both because there is a pending objection to the Magistrate Judge's Report and Recommendation, and because it is distinguishable. Neither argument has merit. First, as indicated above, the District Court has overruled the Commissioner's objection and adopted in full the Report and Recommendation. Second, the Commissioner distinguishes *Cuevas* "because the magistrate judge found the supportability of the State agency review consultants' opinions inherently lacking because they did not examine the claimant, and thus provided no clinical findings of their own." (Def. Mem. at 22 n.10.) That is a distinction without a difference. Regardless of whether the consulting medical record reviewers examined the claimant, the ALJ erred by failing to assess what the consulting doctors used to support their opinions and thus failed to properly address the supportability factor. *Cuevas*, 2021 WL 363682, at *14.

11

examinations in the record show that Plaintiff has limited range of motion in his lumbar spine and an antalgic gait, the ALJ pointed in contrast to other findings that Plaintiff had a "lack of sensory deficits, mostly full muscle strength, and no significant neurological deficits." (R. 22.)  The ALJ provided no explanation, however, of why those findings are at odds with Dr. Appel's opinion that Plaintiff could not perform even sedentary work in light of, among other things, Plaintiff's having a herniated disc, radicular symptomatology, limited range of motion, and having "reached maximum medical improvement." (R. 513.) *See Mungin v. Saul,* No. 3:19-CV-233, 2020 WL 549089, at *10 (D. Conn. Feb. 4, 2020) ("'[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities ...' the ALJ 'may not make the connection himself.'". (quoting *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

Moreover, the ALJ did not provide any basis for characterizing physical examinations in the record as demonstrating "lack of sensory deficits," "mostly full muscle strength," and "no significant neurological effects."  For instance, Dr. Appel conducted a neurological examination of Plaintiff and found that Plaintiff has "had 4++/5 strength to the left lower extremity, 5/5 on the right.  He had decreased sensation to the medial leg and anterior medial knee on the left side.  He had ankle jerks which were 1+.  His knee jerk was 2+ on the right.  He did not have a knee jerk reflex on the left side."  (R. 512.)

It would be difficult to fault the ALJ for finding mostly full muscle strength in light of Dr. Appel's strength measures (i.e., 4++/5 and 5/5).  But can the same be said for the ALJ's characterization of Plaintiff's "lack of sensory deficits" and "no significant neurological effects" when examination by Dr. Appel found "decreased sensation" to the

12

leg and knee and no reflex in the left knee?  Perhaps so; perhaps not. The Court is not in a position to make that determination, and neither was the ALJ.  The ALJ erred by drawing that medical conclusion herself and impermissibly assuming "the mantle of a medical expert."  *Amarante v. Commissioner of Social Security*, No. 16-CV-0717, 2017 WL 4326014 at *10 (S.D.N.Y. Sept. 8, 2017) (remanding because ALJ "improperly assume[d] the mantle of a medical expert"); *see also Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("the ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion") (modifications in original); *Bievenido J.P. v. Commissioner of Social Security*, No. 20-CV-9270, 2022 WL 901612 , at *5 n. 3 (S.D.N.Y. March 28, 2022) ("The ALJ remains a layperson and should not "assume the mantle of a medical expert," whether he does so in the context of the treating physician's rule or when addressing the supportability and consistency of a medical opinion").

      Third, the ALJ erred in discounting Dr. Appel's opinion because "the claimant has not required back surgery and the treating record reflects improvement in pain symptoms with conservative treatment modalities, including physical therapy, heat, and ice."  (R. 22.)  As the Second Circuit has cautioned, "[t]he ALJ and the judge may not impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered."  *Burgess,* 537 F.3d at 129 (modifications in original)(citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Nicole V. v. Commissioner of Social Security*, No. 20-CV-1099, 2022 WL 1134485, at *4 (W.D.N.Y. Apr. 18, 2022) (ALJ's analysis of supportability and consistency factors was flawed because the ALJ discounted medical source opinion based on type of treatment provided).  Yet the ALJ did exactly that.

The ALJ compounded that error by cherry-picking the record on the effectiveness of the treatments to which she referred. Some parts of the record support the ALJ's statement that Plaintiff's symptoms improved with physical therapy, heat, and ice. (*E.g.*, R. 519 (Nov. 4, 2017); R. 314 (Jan. 30, 2018).) Other parts, however, demonstrate the opposite. (*E.g.*, R. 351 (Oct. 17, 2017); R. 584 (Sept. 11, 2019).) The record also contains conflicting evidence about the extent to which Plaintiff was a candidate for surgical intervention. (*Compare* R. 323 (Dr. Neubardt, May 2, 2018) ("he is a candidate for posterior lumbar interbody fusion") with R. 513 (Dr. Appel, Aug. 14, 2018) ("He is not a surgical candidate at this time").)

The ALJ did not address the conflicting evidence. Although an ALJ need not recite every piece of evidence that contributed to her decision, *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010), she "cannot pick and choose evidence in the record that supports [her] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (cleaned up); *see also Salisbury v. Saul*, No. 19-CV-706, 2020 WL 913420, at *34 (S.D.N.Y. Feb. 26, 2020) (ALJ "'cherry-picked' several isolated portions of treatment notes that were supportive of her decision and disregarded the majority of medical evidence in the record"); *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevan[t] evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source"). The ALJ erred by ignoring evidence directly contrary to her characterization of the efficacy of Plaintiff's treatments.

14

The only evidence the ALJ specifically cited from the record as not supporting Dr. Appel's opinion that Plaintiff is limited to less than sedentary work are the clinical findings of Gilbert Jenouri, M.D., made at a consultative examination of Plaintiff less than two months after Dr. Appel rendered his opinion.[9] (R. 22.) As the ALJ explained, "at a consultative examination, the claimant appeared to be in no acute distress, used no assistive devices, needed no help changing for the exam, and was able to rise from a chair without difficulty, and had full motor strength in the upper and lower extremities." (R. 22.) The Court finds no error in either the ALJ's description of Dr. Jenouri's clinical findings or the ALJ's reliance on them.[10] But the ALJ's invocation of those findings does not compensate for the errors described above.

There is yet a further troublesome aspect of the ALJ's assessment of Dr. Appel's opinion. The ALJ found Dr. Appel's opinion less persuasive "because it is not wholly supported by, and consistent, with the clinical findings and objective findings in the record." (R. 22.) The ALJ then proceeded to reference Plaintiff's lack of certain deficits,

---

[9] The Commissioner contends that in finding Dr. Appel's opinion less persuasive, the ALJ satisfied the supportability requirement by citing to medical evidence of record. (Def. Mem. at 22.) Defendant's support for that proposition is an unspecified "supra" cite, which apparently refers to the previous paragraph in which Defendant recites the ALJ's assessment followed by citation to not only the ALJ's opinion but also numerous page citations from the medical records. (Def. Mem. at 21.) That is misleading. In assessing Dr. Appel's opinion, the ALJ did not identify any medical record cites, other than the clinical findings of consulting examiner Dr. Jenouri. (*See* R. 22.)

[10] Plaintiff argues that the ALJ improperly relied on Dr. Jenouri's one-time examination to the exclusion of the other "hundreds of pages of medical evidence." (Pl. Mem. at 18.) The Court does not agree that the ALJ ignored all other evidence in the record – the ALJ set out a detailed review of Plaintiff's medical history earlier in her decision, albeit in the context of assessing Plaintiff's reported symptoms. (R. 19-23.) Nonetheless, as explained above and below, the ALJ erred in other aspects of her analysis (or lack thereof) of supportability and consistency.

15

conservative pain treatment, and the consulting examiner's clinical findings without distinguishing between supportability and consistency. In doing so, the ALJ muddied the Court's ability "to trace the path of [the] adjudicator's reasoning" with respect to the two separate factors, Revisions, 82 Fed. Reg. at 5858, and improperly conflated supportability and consistency, which are distinct factors that require separate analysis. *See Rosario v. Commissioner of Social Security*, No. 20-CV-7729, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) ("Under the new regulations, the ALJ must 'explain' in all cases, 'how he or she considered' **both** the supportability and consistency factors, as they are 'the most important factors'") (quoting 20 C.F.R. § 416.920c(b)(2) (emphasis added)); *Rivera*, 2020 WL 8167136 at *22 (remanding for ALJ to "explicitly discuss both the supportability and the consistency of the consulting examiners' opinions").

Indeed, it is unclear to what extent the ALJ considered consistency in the sense defined by the regulations: consistency of a medical source opinion with evidence from other medical and non-medical sources. The ALJ did refer to Dr. Jenouri's clinical findings. But the ALJ's analysis of Dr. Appel's opinion makes no reference at all to the opinions (as distinct from clinical findings) of either Dr. Jenouri or the consulting non-examining doctor who reviewed Plaintiff's records. To be sure, the ALJ assessed the persuasiveness of the opinions of the other medical and nonmedical sources. (R. 21-23.) But she did not discuss the extent to which those opinions were or were not consistent with Dr. Appel's opinion. On remand, the ALJ should expressly address the consistency or lack of consistency of Dr. Appel's opinion with the other opinions of record.

The revised regulations for evaluating opinion evidence place substantial emphasis on both supportability and consistency and require the ALJ to explain the

16

analysis of each of those factors.  20 C.F.R. § 404.1520c(b)(2); *Vellone*, 2021 WL 319354 at *6.  The ALJ failed to do so in the instant case.  That is not to say the ALJ necessarily reached a wrong result.  It may well be that on remand the ALJ comes to the same determination.[11]  But the Court can neither assume that will be so, nor endorse error in applying the revised framework for evaluating medical source opinions.  *See Rivera*, 2020 WL 8167136 at *14 ("If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases her explanation upon a misreading of the record, remand is required") (quoting *Andrew G.*, 2020 WL 5848776 at *9).

## CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this case shall be remanded for further proceedings.  On remand, the ALJ should separately discuss supportability and consistency and analyze each factor consistent with this opinion.

---

[11] The Commissioner faults the Plaintiff for not explaining how the RFC as determined by the ALJ is inconsistent with Dr. Appel's assessment that Plaintiff needs to elevate his legs four-to-five times per day for 45 minutes to one hour. (Def. Mem. at 23.)  Because the ALJ included a leg elevation requirement in the RFC (specifying a height of less than 12 inches), the Commissioner argues, the ALJ "reasonably resolved the conflict in the evidence." (*Id.*)  The Commissioner then cites court decisions for the proposition that various degrees of limitations can be consistent with sedentary work. (*Id.*)  These arguments do not advance the ball for the Commissioner.  Dr. Appel opined that Plaintiff is limited to "less than sedentary work" (R. 513), which is directly at odds with the ALJ's determination that Plaintiff can perform sedentary work.  Similarly, Dr. Appel opined that Plaintiff could only occasionally sit, stand, and walk, and never kneel, bend, or stoop (R. 513), whereas the ALJ found that Plaintiff could occasionally kneel, bend, and stoop, and was not limited to only occasional sitting, standing, or walking.  (R. 18.)

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: June 6, 2022.
    New York, New York

Copies transmitted on this date to all counsel of record.